PARKER, Judge,
concurring.
I agree that the admission of the wife’s inconsistent statements concerning the defendant’s intent to harm her, which were admitted through the testimony of Deputies Desrosiers and Thornton and Lori Phipps, requires that the case be reversed. Even if it was relevant, its probative value is outweighed substantially by the danger of unfair prejudice. See § 90.403, Fla.Stat. (1989).
Although the trial judge gave an instruction to indicate that this evidence was admitted only for the purpose of testing the wife’s truthfulness,[1] it seems clear that the *70 state offered the statements to let the jury know that the wife at earlier times had stated that the defendant made threatening statements to her.[2] The substances of these statements were significant in advancing the state’s theory of transferred intent. The state, however, argued to the trial court that these statements were only for the purpose of questioning the wife’s truthfulness,[3] even though the state elicited testimony from the wife about other material facts, some beneficial to the state’s case, which were not involved with these statements.[4]
With the exclusion of these inconsistent statements, I believe that the state, upon remand, can continue to seek prosecution under the alternative theories of transferred intent and premeditated intent to kill the victim. The defendant’s statement to Joseph Clark, if believed by the jury not to be “barroom talk,” supports a transferred intent theory. The testimony that the wife appeared frantic when the defendant returned to the bar for the third time on the day of the shooting further supports that theory. If our Supreme Court could conclude in Provenzano [5] that transferred intent applied to the shooting of three courthouse employees when the defendant appeared at the courthouse carrying firearms intent upon killing the two arresting officers who were to testify in the defendant’s case and thereafter shot three courthouse employees, I see no reason why the doctrine of transferred intent cannot apply here.
Alternatively, the state may seek to prove that the defendant shot the victim with a premeditated design. Only the defendant’s testimony indicates that this shooting was an accident. All other eyewitness testimony and expert medical testimony support that while the defendant remained in his pickup truck, the victim was shot while his hands and arms were on top of the cab of the defendant’s truck and that the victim stated “oh, God, no” immediately before he was shot. The victim was shot a second time, with both shots resulting in wounds to his chest and in his abdomen. Unchallenged testimony from a firearms expert reflected that the weapon involved in this shooting was a double action firearm which required a nine-pound trigger pull to fire the weapon. Further, the defendant’s rapid departure immediately after the shooting and failure to return to the scene to aid the victim conflict with the defendant’s testimony that this was an accident. Premeditation, as an element of first-degree murder, may be found in a moment and need only exist for such time as will allow the defendant to be conscious *71 of the nature of the act he is about to commit and the probable result of the act. Asay v. State, 580 So.2d 610 (Fla.), cert. denied, — U.S. -, 112 S.Ct. 265, 116 L.Ed.2d 218 (1991). Whether evidence supports a premeditated design to commit murder is a question of fact for the jury and may be established by circumstantial evidence. Asay. When the state seeks to establish premeditation by circumstantial evidence, the evidence relied upon by the state must be inconsistent with every other reasonable inference. Wilson v. State, 493 So.2d 1019 (Fla.1986). But as Wilson points out, a defendant’s story of an accidental shooting may be countered by evidence concerning the nature of the victim’s wounds and the manner in which the wounds were inflicted. Wilson, 493 So.2d at 1022.
I, therefore, concur in the reversal and remand of this case to the trial court, agreeing that the inconsistent statements of the wife could not be admitted if she continues to deny that she made the statements.[6]

. Members of the Jury, please listen carefully to this instruction that I’m going to give you at this time.
I instruct you that you are not to consider any inconsistent statements made by Janet Parsons as evidence tending to prove or disprove any legal issue in this case. These *70 statements are placed before you solely to help you evaluate the credibility or believability of Janet Parsons, and should be considered by you for no other purpose.
These earlier statements were brought to your attention to help you decide if you believe Janet Parsons’ testimony. You cannot use these earlier statements as evidence of the Defendant’s guilt or innocence.
However, if Janet Parsons said something different about this matter earlier, and the two stories were conflicting, then there may be reason for you to doubt Janet Parsons’ testimony here. That’s up for you to decide.
You would be disobeying your obligation as jurors if you were to consider this testimony as applying to anything more than Janet Parsons' credibility and believability.

.See United States v. Morlang, 531 F.2d 183, 190 (4th Cir.1975) "The overwhelming weight of authority is, however, that impeachment by prior inconsistent statement may not be permitted where employed as a mere subterfuge to get before the jury evidence not otherwise admissible.”

. "The argument is not that the prior statement is true and the testimony in court is false, but that because the witness has not told the truth in one statement, the jury should disbelieve both statements. C. Ehrhardt, Florida Evidence § 6084 (1992 ed.).

. The wife testified to the couple’s early life together in Indiana and the reasons for their marital discord, to the circumstances surrounding the purchase of the pistol that killed the victim, to the fact that the defendant showed up twice at the bar where she worked on the day of the shooting and left when requested to do so and then returned a third time, and that she sent a friend in the bar out to check on her husband when he returned to the bar for the third time when the shooting occurred.

. Provenzano v. State, 497 So.2d 1177 (Fla. 1986), cert. denied, 481 U.S. 1024, 107 S.Ct. 1912, 95 L.Ed.2d 518 (1987).

. Obviously, upon retrial, if the wife admits to making the earlier statements, the statements would be admissible as admissions against a party, the defendant, under section 90.803(18), Florida Statutes (1989). If this occurred, the wife could be impeached by the statements she made in this trial, under section 90.608, Florida Statutes (Supp.1990).