CLARK, J.
This is an appeal by the State of Florida from an order suppressing cocaine found during a search of Paul A. Petroni’s house. Petroni also cross-appeals from an order denying in part his motion to suppress statements he made to police. We reverse the trial court’s order suppressing the cocaine and affirm its order denying in part Petroni’s motion to suppress statements.
I.
Petroni’s house was searched pursuant to a warrant. The affidavit in support of the search warrant detailed that a confidential informant had twice, “within the past fifteen (15) days” purchased cocaine from Petroni. The affiant, Detective C.A. Bates, described the buys as “controlled.” On the first buy, he explained that he searched the informant and his vehicle before the buy to make sure he and the vehicle were clean; Bates then followed/tailed the informant to Petroni’s home. Bates averred that another detective, Detective Torres, saw the informant “walk towards the front door of the Premises,” saw Petroni arrive at the home on a motorcycle, and then watched Petroni “enter the front door of the Premises.” Shortly thereafter, Torres saw Petroni and the informant “exit the front door of the Premises.” Afterwards, the informant met Bates at a pre-arranged location and “turned over a plastic bag that contained an off-white substance believed to be cocaine”; Bates searched the informant and his vehicle again, finding no further contraband. The substance field-tested positive as cocaine. Further, Bates averred the informant stated that while obtaining the cocaine, Petroni had told the informant, “in substance, that Petroni has a source of cocaine supply and therefore Pe-troni maintains a supply of trafficking amounts of cocaine for sale.”
For the second buy, Bates detailed the same search procedure; this time another detective accompanied the informant to Petroni’s home. That detective then watched the informant “walk through a gate attached to the side of the Premises.” Shortly thereafter, Bates averred that the detective saw Petroni and the informant exit from that gate; the informant returned to the vehicle and the two met *64 Bates at the pre-selected location. Bates averred the informant gave him “a plastic bag that contained an off-white substance”; Bates again searched the informant, finding no controlled substances. The informant claimed “he met Petroni on a deck right outside Petroni’s bedroom.”
Given these facts, Bates averred that he believed additional cocaine was present in the home, and sought a search warrant for cocaine. A judge found probable cause, signed the warrant, and police ultimately recovered forty-two grams of cocaine during the search of Petroni’s home.
Petroni moved to suppress the cocaine through, pertinent to this appeal, two separate motions. He first argued the affidavit supporting the search warrant “intentionally or recklessly misrepresent[ed] certain factual matters,” and probable cause would not exist with their redaction. Petroni explained other material was “intentionally or recklessly omitted from the affidavit.” And finally, he claimed the affidavit included false statements as well. Petroni titled his motion, Franks, referring to the United States Supreme Court case, Franks v. Delaware, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978).
Franks permits defendants to attack a warrant where police intentionally lie or misstate information material to the probable cause determination in the affidavit supporting the warrant in order to deceive the judge into issuing the warrant. Id. at 171-72, 98 S.Ct. 2674. The “central problem” in Franks concerned these falsehoods or misstatements “that may be said to have resulted in deception.” See id. at 168-71, 98 S.Ct. 2674; Johnson v. State, 660 So.2d 648, 655-56 (Fla.1995) (citing United States v. Colkley, 899 F.2d 297, 301 (4th Cir.1990)). Franks has a “limited scope” and only applies where there are non-conclusory “allegations of deliberate falsehood or of reckless disregard for the truth” — “negligence or innocent mistake are insufficient.” Franks, 438 U.S. at 168, 171, 98 S.Ct. 2674. Second, the defendant must show that the affidavit, without the deliberate falsifications, fails to provide probable cause. Id. at 168, 171-72, 98 S.Ct. 2674. Only when a defendant shows that the officer was attempting to deceive the judge with false information and the remaining allegations are insufficient to support a probable cause finding, is a full hearing even necessary. Id.
Franks, however, did not concern omissions made to a judge in an attempt to influence the judge’s action; it was limited to deceptive falsehoods and misstatements. The Florida Supreme Court considered the “fundamentally ... different problem” of omissions in affidavits in Johnson. As applied to omissions, defendants must show: (i) the omitted material, if added, would have eviscerated probable cause, and (ii) “intentional or reckless police conduct that amounts to deception.” Johnson, 660 So.2d at 656. Absent a preliminary showing of both the deception prong and the materiality prong, the court should summarily deny a Franks motion. Id.
Omissions, the court points out, may be wholly reasonable, “in the sense that they exclude material [that] police in good faith believed to be marginal, extraneous, or cumulative. Such an exclusion is a valid and necessary part of the warrant process.” Id. Additionally, parties reasonably may disagree as to the import and effect of the large amount of information that necessarily will be omitted in the warrant process, since police routinely collect far more information than goes into the affidavit. Id. (citing 2 Wayne R. LaFave, Search and Seizure: A Treatise on the Fourth Amendment 4.4(b) (2d ed. 1987 Supp.1995)); see also id. (quoting with approval United States v. Colkley, 899 F.2d 297 (4th Cir.1990)).
*65 In short, to meet the Franks test, police conduct must rise to the level of hoodwinking or bilking, duping the issuing judge or magistrate into signing the warrant; that is, an allegation the affiant had information she knew should be included in the affidavit and failed to include it either intentionally or recklessly with the idea the omission would then sway the issuing judge or magistrate in her favor. See id. at 655-56.
Petroni argues the following misrepresentations and omissions meet this rigorous standard:
In the affidavit, the affiant represents that an informant reported that “Petroni told the informant, in substance, that Petroni has a source of cocaine supply and therefore Petroni maintains a supply of trafficking amounts of cocaine for sale.” ...
However, in truth, as the affiant subsequently testified at deposition, the informant in fact did not observe any further supply of cocaine in the residence on the occasion in question and was not told by Mr. Petroni that additional cocaine was in the residence. Rather, the informant told the affiant merely that he had at some unspecified time in the past observed cocaine present in the residence.
In addition, Petroni claimed police intentionally or recklessly omitted that: (i) the quantities of cocaine in the buys were small, only 3.7 grams; (ii) the informant had not been previously used and was never determined to be reliable; (iii) the buys were not controlled; and, (iv) the informant had observed quantities of cocaine at the home only in the past.
Finally, Petroni also claimed the affidavit was false in one respect. Contrary to the affidavit, Torres testified she had not actually seen Petroni or the informant enter the house during the first buy. Torres testified she “assumed” the men entered because after following the informant there, she watched Petroni arrive at the house on his motorcycle and “walk[j up towards the front door of his residence;” she then saw the two men “exit the residence together.”
In error, the trial court suppressed the cocaine pursuant to Franks, concluding that adding the omitted information and removing the false statement would defeat probable cause and that the combination of omissions regarding the amount of drugs and whether drugs were actually seen meant the issuing judge could not determine whether the information was stale. We reverse because Franks was not even implicated.
As a determinative matter, Petroni did not show, allege, or argue the omissions or the false statement amounted to deceptive behavior on the part of the police intended to sway the judge. Johnson demands a showing of this misconduct — without it, the court is not even required to hold an evi-dentiary hearing. Johnson, 660 So.2d at 656. Instead, the trial court focused on the materiality prong and how, with Petro-ni’s additions, there was a substantial possibility the issuing judge would not have found probable cause. Essentially, whether the officers intended any misconduct to sway the issuing judge was ignored. Pe-troni’s failure in this respect is fatal to his Franks claim.[1]
Certainly, the affidavit could have included additional material. But that is not the Franks standard — nor should it be. Franks was meant to deal with a very specific situation: intentional or reckless *66 police conduct amounting to deception. Were it otherwise, courts would face “endless rounds of Franks hearings.” Johnson, 660 So.2d at 656 (quoting with approval Colkley, 899 F.2d at 301).
Petroni needed to show police cherry-picked specific information, while leaving out other pertinent, material information, all the while intending that the issuing judge would thus be duped into signing the warrant she otherwise would not have signed. Instead, Petroni’s arguments amount to a claim that the issuing judge erred in finding the affidavit contained sufficient facts to find probable cause. In fact, Petroni based his second motion to suppress the cocaine on this very probable cause argument; the trial court mooted this motion after granting the Franks motion. Upon remand, Petroni is entitled to have this probable cause motion determined on the merits. We make no suggestion as to the proper resolution of that issue.
II.
Petroni also cross-appeals the trial court’s denial of his motion to suppress “any and all statements.” Petroni seeks to reverse the trial court’s refusal to suppress any statements he made after the search and post-Miranda warnings; he claims they were tainted by the illegal search. First, based on our resolution of the State’s appeal, the search was not illegal. Second, and importantly, even if this Court had determined the search was illegal, we would decline to entertain Petroni’s argument on the merits. In the trial court, Petroni’s counsel clearly conceded, “whatever statements the State intends to submit before [Petroni] was Mirandized can’t be used” — but, “after Miranda, it’s fair.”
To preserve an argument for appeal, an appellant must timely and contemporaneously object at the trial level, on a stated legal basis, and then raise that specific contention again on appeal. Harrell v. State, 894 So.2d 935, 940 (Fla.2005). Petroni’s only contention at trial was that any 'pre-Miranda statements should be excluded — “after Miranda, it’s fair.” This Court will not, for the first time on appeal, entertain an argument which could have— and should have — been raised at the trial level. See id.
III.
Accordingly, the portion of the trial court’s order granting Petroni’s motion to suppress on Franks grounds is REVERSED, and this cause is REMANDED for further proceedings. As to the cross-appeal, we AFFIRM the trial court’s decision.
MARSTILLER and SWANSON, JJ., concur.

. Because Petroni's Franks claim fails on this ground, it is unnecessary for us to address the materiality prong. We express no comment as to what the proper resolution of that question is or should have been.